**PORT PERRY MARKETING CORP., Appellant,**

v.

**Lawrence W. JENNEMAN, Sr. and Annetta M. Jenneman, Respondents.**

**No. ED 72832.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 22, 1998.

---

Thomas W. Blair, St. Genevieve, Dale E. Gerecke, Cape Girardeau, for appellant.

Richmond A. Payne, Daniel H. Rau, Richmond A. Payne & Associates, L.C., Cape Girardeau, for respondent.

RICHARD B. TEITELMAN, Judge.

This is an appeal from a judgment entered in favor of Lawrence and Annetta Jenneman ("Jennemans") and against Port Perry Marketing Corp. ("Appellant") in the Circuit Court of Perry County, Missouri by the Honorable John W. Grimm on July 9, 1997, following a non-jury trial. Appellant had filed suit to enforce certain restrictive covenants and to obtain an affirmative injunction requiring the Jennemans to remove an Airstream camper trailer from their property at Port Perry, a residential and recreational development in Perry County, Missouri. The trial court found that the General Scheme of Restrictions was a valid and enforceable restrictive covenant. However, the trial court found that the restrictive covenant regarding trailers was not enforceable against the Jennemans, their existing property and their existing trailer, by application of the doctrine of laches. Appellant argues that the trial court erred in applying the doctrine of laches to deny appellant the relief it sought because: (a) Appellant did not unreasonably delay the assertion of its rights; and (b) the Jennemans have suffered no legally recognizable harm. We affirm.

### Background

On August 2, 1974, the Jennemans acquired an interest in property located in Plat 2 of Port Perry Subdivision through a Contract for Deed for the purchase of Lot 29. The Jennemans have acquired interests in additional properties located in Plat 2, specifically, they purchased Lot 30 in 1975 and Lot

31 in 1990. The scope of the legal dispute concerns only Lot 29.

Lot 29 of Plat 2 of the subdivision is subject to a General Scheme of Restrictions (also referred to as "Restrictions"), which regulates the types of uses of lots and sets restrictions upon what types of structures can be placed upon the lots in Port Perry Plat No. 2. The specific restriction at issue before this Court is the restriction relating to the types of structures that can be placed and maintained upon subdivision lots.

The original developer of the area was to construct a campground. Mr. Jenneman testified that once the campground was completed, all the property owners that had purchased lots in the development would be able to take their campers and put them on the campground. The campground was to be maintained by property assessments, but there would be no fee for camping.

Throughout the time that the Jennemans have owned lots in Port Perry, those owners or agents who could enforce the Restrictions were aware that lot owners regularly violated the Restrictions. Further evidence demonstrates that the previous developer provided written notification to lot owners, including the Jennemans, that they could place camper-trailers upon lots subject to the Restrictions. The notification provided that lot owners could camp on their lands until the campground construction was completed. To the date of trial, no campground has been constructed.

During or about 1975, the Jennemans placed a camper-trailer upon Lot 29 of Plat No. 2 of the Port Perry Subdivision. Since then the Jennemans have entered into contracts and purchased real and personal property knowing that the Restrictions would not be enforced. Specifically, in reliance on the Restrictions not being enforced, (1) they spent $8,000 to purchase a new camper-trailer; (2) they spent $30,000 on improvements to their lots; and (3) they spent $21,000 to purchase additional lots in Plat No. 2.

In July of 1993, Appellant acquired Port Perry Subdivision. The acquisition included: duties to maintain common areas; ownership of unpurchased lots in certain plats; owner-ship of the lake; and, the ability to enforce the Restrictions upon owners of lots. Appellant is the successor in interest to the original developer of the area.

On May 19, 1994, Appellant provided written notification to Port Perry property owners that after the 1994 season, camping could not occur on lots in Plats No. 1 and 2. The notice further indicated that all campers must be removed by December 31, 1994. When Appellant began enforcing the Restrictions, approximately twenty campers were in Plats No. 1 and 2. Now only the Jennemans' camper-trailer remains.

On January 12, 1996, Appellant filed its Amended Petition in the Circuit Court for Perry County, Missouri. The Amended Petition sought a permanent injunction and a declaratory judgment against the Jennemans. The Jennemans filed an Answer asserting affirmative defenses including laches.

On April 24, 1997, a non-jury trial was held before the Honorable John W. Grimm. On July 9, 1997, a Judgment was entered specifically finding that the Restrictions were valid and enforceable. However, Judge Grimm found that based upon the doctrine of laches, the Restrictions were not enforceable against the Jennemans.

## Discussion

On review of a court-tried case, we will sustain the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Kling v. Taylor–Morley, Inc.*, 929 S.W.2d 816, 819 (Mo.App. E.D.1996).

The question of the validity of the Restrictions is not before this Court. Rather, we must determine whether the Restrictions are enforceable against the Jennemans. Appellant argues that the trial court erred in applying the doctrine of laches to deny Appellant's claim because (1) Appellant did not unreasonably delay the assertion of its right to enforce the Restrictions, and (2) the Jennemans have suffered no legally recognizable harm. We disagree.

"Invocation of laches requires that a party with knowledge of the facts giving rise to his rights delays assertion of them for an excessive time and the other party suffers legal detriment therefrom." *Blackburn v. Richardson,* 849 S.W.2d 281, 289 (Mo.App. S.D.1993). For the doctrine to apply, the delay must be unreasonable and unexplained. *Id.* Laches is a question of fact to be determined from all of the evidence adduced at trial. *Hagely v. Board of Educ. of Webster Groves School Dist.,* 841 S.W.2d 663, 670 (Mo. banc 1992). Generally, the doctrine of laches is appropriately applied where one party's delay materially prejudices a party-opponent. *Estate of Holtmeyer v. Piontek,* 913 S.W.2d 352, 356 (Mo.App. E.D.1996). However, it does not apply where "no one has been misled to his harm in any legal sense by the delay, and the situation has not materially changed." *Metropolitan St. Louis Sewer District v. Zykan,* 495 S.W.2d 643, 657 (Mo.1973).

Appellant argues that it tried to enforce the Restrictions within one year of its acquiring the development and therefore it did not unreasonably delay its enforcement of the Restrictions. We disagree and find that the doctrine of laches can be charged against Appellant for the unreasonable delay of its predecessors.

Though Appellant's predecessors had a right to enforce the Restrictions, they consciously acquiesced to the continued violation of the Restrictions by numerous property owners in the subdivision. Approximately twenty camper-trailers were used in the subdivision prior to Appellant becoming the property developer. While the record does not indicate how long the other camper-trailers had been used in the subdivision, it does reflect that the Jennemans had used a camper-trailer on their lot from 1975 or 1976 until Appellant attempted to rid the subdivision of camper-trailers in 1994. This nineteen year delay in enforcing the Restrictions is unreasonable

Moreover, the Restrictions were voluntarily and explicitly waived by the subdivision's previous developers in a letter to lot owners in August of 1974. The letter provided that both tents and RV's could be used on lots "until the campground is available and until all utilities are available to the lot." The Jennemans have continuously maintained a camper-trailer on Lot 29 since 1975 or 1976 and the campground has never been completed. We find that under the facts of this case, it would be inequitable to not charge Appellant with the delay of its predecessors.[1]

Appellant also argues that the Jennemans have suffered no legally recognizable harm because they had actual knowledge of the Restrictions, they are charged with notice of the Restrictions, and they proceeded in the face of that knowledge with improvements to their property with full knowledge they were violating the Restrictions. We disagree.

The prejudice and disadvantage which supports laches is generally of two kinds: (1) the loss of evidence which would support the Respondents' position and (2) a change in position in a way that would not have occurred but for the delay. *Lyman v. Walls,* 660 S.W.2d 759, 761 (Mo.App. E.D. 1983). In the case at bar, the Jennemans changed their position by expending money, acquiring additional land, and purchasing a new camper-trailer instead of building a home.

The Jennemans testified at trial that they relied on the Restrictions not being enforced when they entered into contracts and purchased real and personal property. They spent $8,000 to purchase a new camper-trailer. They also spent $30,000 on improvements to their lots in the subdivision and purchased $21,000 in additional lots in Plat No. 2 of the subdivision. We find it was reasonable for the Jennemans to rely on the representation made to them by the then-

---

1. Though no Missouri court has previously determined the issue of whether an unreasonable delay by a previous landowner can tack or be charged against a subsequent purchaser, courts in other jurisdictions have done so. See, e.g., *Robins Island Preservation Fund, Inc. v. Southold*

*Development Corp.,* 959 F.2d 409 (2 nd Cir.1992) (Second Circuit applying doctrine of laches where unreasonable delay charged against the plaintiff occurred during the Revolutionary War.); *Richardson v. Richland County,* 219 Mont. 48, 711 P.2d 777 (Mont.1985).

developer that camping would be allowed pending completion of a campground.

We find that there was an unreasonable delay in the assertion of the right to enforce the Restrictions and that the Jennemans suffered a legal detriment therefrom. We affirm the judgment of the trial court.

Chief Judge ROBERT G. DOWD, and Judge KATHIANNE KNAUP CRANE, concur.